May it please the Court, I'm Stephanie Adraktis, and I represent the petitioner David Shaw. Under the AEDPA, this Court may grant habeas corpus relief in State court cases for two basic kinds of errors, legal and factual. In this case, the State Court of Appeal opinion that reversed the trial judge's order granting Mr. Shaw a new trial committed both kinds of errors. The first error, the legal error, was in the application of and in the statement of the Strickland prejudice standard. In the Court of Appeal opinion, they applied an incorrect formulation of Strickland's prejudice rule. In that, they initially stated correctly, Mr. Shaw must show a reasonable probability of a different result at trial, but then put a different spin on the standard saying, in other words, that means that he must show us what the trial would have looked like so that we can compare that hypothetical trial to the trial that he actually got. And applying that standard, which was one that was based on California State law, they found that Mr. Shaw was not prejudiced by his lawyer's failure to introduce evidence of Sherry Bell's drug and alcohol intoxication at his trial. In looking at the Supreme Court precedents as to unreasonable application of Federal law, Williams v. Taylor, that case discusses a similar kind of error by a State court, because in that case the Virginia Court of Appeal had applied a different spin on Strickland prejudice in determining that the defendant in that case was not prejudiced by his counsel's error. This is the same kind of mistake. And under the rule in France v. Hazey and other cases in this circuit, this court need not defer to the California Court of Appeal decision as to prejudice because the Court of Appeal applied the Strickland prejudice rule incorrectly. One can then go to how that court applied the prejudice standard to see that it incorrectly applied the prejudice standard in this case. For a number of reasons. The first and most important one was that the Court of Appeal failed to acknowledge the prejudice that accrued to Mr. Shaw's defense by the fact that trial counsel was not allowed to and did not cross-examine Sherry L. about her drug and alcohol intoxication due to his failure to produce an expert witness. The court focused in its opinion simply on the notion that there was insufficient evidence of how much methamphetamine she had in her system or when she ingested the methamphetamine that she admitted that she had taken that night. But they didn't look to the fact that trial counsel had available to him test results from the hospital that showed that Sherry L.'s blood alcohol level was .02 hours after the incident and that through a generally accepted process of retrograde extrapolation, trial counsel could have presented expert testimony at trial that her blood alcohol level was between .12 and .14 at the time of this incident. That is simply under any standard a person who is intoxicated and quite intoxicated. We have in this record declarations from Dr. Patel. We have a declaration from Park-Gilman Clinic that tells us that a person who has ingested that much alcohol is in a confusional state. When you add to it any amount of methamphetamine, we've quibbled in this case how much methamphetamine did she have, when did she have it. We know that she had it before she encountered Mr. Shaw because that's what Sherry L. told Detective Cummings. Trial counsel knew this. Sotomayor, are we supposed to give ed to deference to the State court decision? Your Honor, I think my view, after looking at all the precedents and looking at the opinion, is that this Court need not defer because the court of appeal did not apply the correct formulation of Strickland prejudice. If one looks to the trial judge's application of the Strickland prejudice standard, now that's a decision I believe is a straightforward application of Strickland prejudice, and the trial judge found that Mr. Shaw was prejudiced. And the authorities that I cited in my brief regarding deferring to a trial judge's assessment of credibility, I think are relevant to some of the difficulties here with applying a deference standard when you have differing rulings from State court judges. My view is, based on what our Supreme Court has said about the unique position of trial judges, is that this is and was a credibility determination by the trial judge. He saw the whole trial. Not only that, he saw and heard the evidence that has been brought before these various courts as allegedly corroborating what Sherry L. had to say, and the trial judge said at the end of all of that that there was prejudice here. Counsel, but we look at the last reason decision, right? Understood, Your Honor. Under the authorities that talk about what decision this Court looks to, it looks to their last reason decision. However, under Franz, this Court's decision, as well as other decisions that talk about whether the last reason decision reasonably applied or correctly applied the standards from the United States Supreme Court, I think the mistake that was made in the court of appeal opinion means that this Court need not apply a deference. What was the mistake, in your view, in terms of the standard for assessing prejudice? That they articulated initially the Strickland prejudice standard and then said, in other words, a defendant must show us what the trial would have been like, a hypothetical trial. When you read the opinion, the authorities that the court of appeal cited to support that formulation of Strickland prejudice, those are State law cases in rape fields. But when we're looking at the last reason decision, we really don't have to go into the analysis. If the result is consistent with Supreme Court precedent, then doesn't that pass muster? According to, under the authorities of this Court, this Court can affirm on another theory supported by the record. If they get it right. If the Supreme Court, if the State court gets it right under Supreme Court precedent, then we don't really dissect how the State court got there. We just look at whether or not the result is consistent with Supreme Court precedent, don't we? In a Strickland analysis, I think that it's a little, that process, though, becomes so fact-dependent that it's, I understand what the Court is saying, but I believe that deference isn't due, and that gets this Court into a position of conducting more of a de novo review of what happened. Well, I don't think that there's any authority for that. But my understanding of your position was that you thought that the district, that while they invoked Strickland, that the court of appeals was wrong in saying that the defendant has to show us what the trial would look like. A trial-like showing. And my understanding is that, correct me if I'm wrong, that this Court has already dealt with that language and has said that that's not an improper formulation of Strickland, because what the Court was trying to do was to assess prejudice, which is what would have been the result of the mistake. Where I saw that language coming up was more in the area of sentencing determinations in death penalty cases, where even Strickland itself focuses more on comparing the facts of what was brought before the Court in the habeas proceedings with the facts that were brought out at the trial. And in here, the only point I'm trying to make in terms of this deference issue is that I believe that this Court is not bound by EDPA strictly to the court of appeal analysis. There were numerous factual mistakes in the court of appeal opinion as well that gets us into the D2 prong of 2254, and this Court should grant habeas relief under that prong as well. The most striking error is the court of appeals statement that there were no positive results for methamphetamine in Sherry L's blood. There could be no positive results for methamphetamine in Sherry L's blood, and hence the expert opinions of the defense were meaningless. That just wasn't true. I mean, it's in the transcript at the new trial motion. At the end, when trial court granted the motion for a new trial, defense counsel stood up and said, we're asking that that blood sample be split and sent to a forensic lab for testing. It was right there in the record. The court of appeal ignored that, and instead of maybe remanding the case and saying, where are these results, were there test results showing the amount of methamphetamine in the blood, they issued an opinion making statements that were simply incorrect. You have about half a minute left. Thank you, Your Honor. At the end of the day, the corroborating evidence that has been cited by so many in the opinion of the district court and in respondents' briefs simply did not corroborate the crucial aspects of this case, in particular the rate for which Mr. Shaw is now serving a 15-year-to-life open-ended sentence. He has served the nine years determinant term on the attempted murder. Even if one puts that aside, he is now in prison on this rape allegation, and the excerpts of the Record 102, I point to the district court's citation of many reasons why that's a troubling conviction. Thank you. We have used your time. Good morning. May it please the Court, my name is Tammy Crenson, Deputy Attorney General for Warden Campbell. The court of appeal didn't get this case wrong. The court of appeal found that despite the lack of testing that was in front of them, that there was no prejudice based on the physical injuries, the physical evidence of the injuries that the victim sustained that corroborated her story, and those are very significant. She had a vaginal tear and she had strangulation marks, and even the defense experts of the new trial motion didn't refute those physical findings. This simply is not a case where we have one person's word against another and it all boils down to a credibility determination. There was physical evidence that corroborated that the victim had been raped. What's your response to opposing counsel's position that the court of appeal used the wrong standard in assessing strickling prejudice? The court of appeal didn't use the wrong standard. The court of appeal addressed the issue that there hadn't been no testing of the methamphetamine to know what was in her system, or there were no tests in front of them, and it wasn't the court of appeal's duty to get that evidence in front of them. That evidence didn't come until after the new trial motion. So the court of appeal, looking at the case, found that they didn't have that information, but even if they did have that information, it wouldn't matter because of the physical evidence that refutes that he could establish any prejudice because that evidence actually corroborated the victim's testimony. And so this is not, under any argument, cannot be an objectively unreasonable application of strickling because of that prejudice. We could debate whether counsel should have done certain things or shouldn't have, but at the end of the day, the bottom line is that there's no prejudice given the physical evidence. And we know that the jury looked at that carefully because the jury requested that information, wanting to see Nurse Clifton's evidence of the injuries. And again, defense counsel's experts didn't refute the physical evidence. Dr. Green said that the vaginal tear was more consistent with sexual assault than not and also that the victim had been strangled. And what's important here, too, is that now on habeas, Mr. Shaw is contending, I struggled with her, I tried to choke her, but I didn't rape her. The problem is that at the trial, the jury heard evidence of his police statements that said, he said to the police, I never touched her except for having consensual sex. We didn't struggle. I didn't choke her. So the evidence that the jury was looking at was inconsistent with what he had told the police. So what do you make of the fact that the trial court's decision varied from that of the court of appeal? The trial court certainly appears to have made a credibility determination and bothered by the fact that the defense counsel said he consulted an expert. And the court didn't believe that. And certainly that is a significant finding. But, again, that goes to counsel's performance, whether it was deficient or not, and not whether there was prejudice. And even if he had gotten an expert to testify that, as the district court recognized later, that it's very difficult to determine, to have these things interpreted. And there's been no evidence interpreting even the subsequent testing that said she had methamphetamines in her system. And even defense experts said that determining methamphetamine levels is not a straightforward task. And certainly the prosecution could have refuted that evidence. As they presented at the new trial motion, the victim didn't appear to have any signs of methamphetamine use when she went into the hospital a few hours after the rape. Did the trial court find there was prejudice? The trial court, I believe, focused on the fact that there was, didn't consult the expert, but certainly had to find prejudice in order to find ineffective assistance. But the focus was on the credibility findings for the attorney and what the trial court felt that the attorney failed to do. Why do you suppose the trial court at least implicitly found prejudice and the court of appeal made a different finding? Well, I don't know why there's a difference. I know that when the court of appeal looked at it, they reversed it saying there was no prejudice based on those injuries. And certainly I don't know what the trial court specifically felt other than the ruling, but it seemed that the trial court felt that counsel had been less than candid with the court. But again, we have to get to the second prong of Strickland, which is the fact that there has to be prejudice. And even under ADPA, it doesn't matter whether this court feels that's correct. It's whether it's objectively unreasonable. And based on that physical evidence that's unrefuted, we cannot say that the court of appeal's decision was objectively unreasonable. If there's any further questions? I have none. I don't appear to be any. I'll submit. Thank you. Are there any questions of the talents counsel? No. No. Thank you. The case just argued is submitted for decision.
judges: Moody, Schroeder, Rawlinson